Filed 7/16/26

**CERTIFIED FOR PUBLICATION**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MIGUEL SUA,<br><br>     Petitioner,<br><br>     v.<br><br>SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | D087742<br><br><br><br><br>(San Diego County<br>Super. Ct. No. SCE431958) |
| ALEXANDER GUTHRIE,<br><br>     Petitioner,<br><br>     v.<br><br>SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | D087810<br><br><br><br><br>(San Diego County<br>Super. Ct. No. SCD305369) |

CONSOLIDATED ORIGINAL PROCEEDINGS in mandate.  Steven E. Stone and Selena D. Epley, Judges.  Petitions granted.

Jo E. Super, Chief Deputy Primary Public Defender and Katie A. Nagler, Deputy Public Defender, for Petitioners.

No appearance for Respondent.

Summer Stephan, District Attorney, Linh Lam, Valerie Ryan, Emmaline Campbell and Reilly McFadden, Deputy District Attorneys, for Real Party in Interest.

Miguel Sua and Alexander Guthrie, defendants in unrelated felony prosecutions, requested pretrial mental health diversion under Penal Code[1] section 1001.36.  That statute does not authorize a court to order a defendant to submit to a prosecution mental examination.  The People instead moved under section 1054.3(b)(1), a discovery statute, to compel these examinations.  Their motions were granted over the defendants' opposition.

Sua and Guthrie each petitioned this court for a writ of mandate asking us to vacate these orders and direct the courts to deny the People's motions, claiming that section 1054.3(b)(1) does not apply to a request for mental health diversion.  We agree.  The plain language of this statute, the discovery scheme of which it became a part, and its legislative history establish that an order compelling a mental examination is authorized only when a defendant notices an intent to put on a mental state defense *at trial* through expert

---

[1]     Subsequent undesignated statutory references are to the Penal Code. For brevity, we omit the word "subdivision" when referring to any subdivision of section 1054.3.

2

testimony.  Because the hearing on a request for mental health diversion is not the defendant's trial, we will issue the requested peremptory writs of mandate.

## FACTUAL AND PROCEDURAL BACKGROUND

The San Diego County District Attorney charged Sua and Guthrie with multiple felonies in separate and unrelated cases.  Shortly after pleading not guilty to all charges, both defendants requested pretrial mental health diversion under section 1001.36.  Each request was supported by a diagnosis of a qualifying mental disorder and an expert opinion that the disorder contributed to the defendant's commission of the charged offenses.  Neither defendant indicated at the time whether he planned to present a mental state defense at trial.

The People responded to both requests by moving under section 1054.3(b)(1) to compel each defendant to submit to a mental examination by a prosecution expert.  In the People's view, the defendants' diversion requests fell within the ambit of this statute because those proceedings are a "phase of the criminal action" during which their "mental state[s]" will be "in issue." (§ 1054.3(b)(1) & (B).)  In each case, the superior court agreed and granted the People's motion over Sua's and Guthrie's objection.

The defendants petitioned this court for writs of mandate asking us to direct the trial courts to vacate their orders and deny the People's motions, arguing that they were not authorized by section 1054.3(b)(1).  In each case we issued an order to show cause why relief should not be granted.  Because

3

the parties' submissions in both cases raise the same legal issue, we consolidated the two matters.[2]

## DISCUSSION

### A. *General Background*

#### 1. *Mental Health Diversion*

The mental health diversion program was statutorily authorized by the Legislature in 2018 and codified at section 1001.36. (See Stats. 2018, ch. 34, § 24.) This program "allows qualifying defendants to be treated in a community mental health program for up to two years, after which, if they perform " 'satisfactorily in diversion, ... the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion.' " (*People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886; accord § 1001.36, subds. (f)(1)(C) & (h).) Diversion may be granted only if (1) the defendant makes a prima facie showing that he or she meets both of the threshold eligibility requirements, (2) the defendant is suitable for diversion, and (3) the trial court is satisfied that the recommended program of mental health treatment will meet the defendant's specialized mental health treatment needs. (See § 1001.36, subds. (b), (c), (f)(1)(A)(i); *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891–892 (*Sarmiento*).)

The eligibility determination is two pronged.[3] First, a defendant must provide evidence of a diagnosis or treatment for a qualifying medical disorder

---

[2] The People also moved in both cases to compel the production of the materials the defense experts relied upon in forming their opinions as well as their notes. The court granted this motion in Sua's case but denied it in Guthrie's. The People have abandoned their request for Sua's expert's notes; thus, this issue is not before us.

4

within the last five years by a mental health expert. (§ 1001.36, subd. (b)(1).) Second, the diagnosed disorder must have been "a significant factor in the commission of the charged offense," that is, it was either "a motivating factor, causal factor, or contributing factor to the defendant's involvement." (§ 1001.36, subd. (b)(2).) There is a presumption—rebuttable only by clear and convincing evidence—that this causal link exists. (*Ibid.*) At this second step, "[a] court may consider any relevant and credible evidence, including, but not limited to, police reports, preliminary hearing transcripts, witness statements, statements by the defendant's mental health treatment provider, medical records, records or reports by qualified medical experts, or evidence that the defendant displayed symptoms consistent with the relevant mental disorder at or near the time of the offense." (*Ibid.*) The statute, however, does not authorize an order compelling a defendant to undergo a prosecution mental examination.

During the suitability analysis, the court determines whether, in the opinion of a qualified mental health expert, the diagnosed mental disorder is treatable. It also confirms that the defendant will consent to diversion and waive his or her speedy trial rights, and it also assesses the likelihood that he or she will pose an "unreasonable risk of danger to public safety … if treated in the community." (§ 1001.36, subd. (c)(1)–(4); *Sarmiento, supra*, 98 Cal.App.5th at pp. 891–892.) If the eligibility and suitability standards are satisfied and the court finds that the recommended treatment program will meet the defendant's needs, it may postpone the prosecution and direct the

---

3     Neither defendant is charged with an offense that would disqualify him from mental health diversion. (See § 1001.36, subd. (d).)

5

defendant to undergo mental health treatment. (§ 1001.36, subd. (f)(1)–(A)(iii).)

The Legislature expressly envisioned that the hearing to determine eligibility and suitability "shall be informal and may proceed on offers of proof, reliable hearsay, and argument of counsel." (§ 1001.36, subd. (e).) It is "not a trial." (*People v. Watts* (2022) 79 Cal.App.5th 830, 837 (*Watts*).) It is, rather "a *pretrial* hearing involving a *statutorily created alternative* to criminal prosecution." (*Ibid.*)

2.     *A Criminal Defendant's Discovery Obligations*

The law governing discovery in criminal cases underwent a major change in June 1990 when the electorate approved Proposition 115, the Crime Victims Justice Reform Act, which imposed reciprocal discovery obligations on criminal defendants. (See *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1102 (*Verdin*).) This initiative amended the state constitution to provide that "discovery in criminal cases shall be reciprocal in nature, as prescribed by the Legislature or by the people through the initiative process." (Cal. Const., art. I, § 30, subd. (c).) It also added sections 1054 et seq. to the Penal Code to "establish[] the procedures for, and limitations on, discovery in criminal cases." (*Verdin*, at pp. 1102–1103.)

A criminal defendant's discovery obligations are identified in section 1054.3. Defendants must disclose the names and addresses of persons they "intend[] to call as witnesses at trial, together with any relevant written or recorded statements of those persons, or reports of the statements of those persons." (Former § 1054.3(a).) They must also produce any expert reports or statements, "including the results of any … mental examinations" that he or she plans to rely upon at trial along with any "real evidence" that he or she expects to offer. (Former *id.*, subds. (a) & (b).)

6

No other discovery obligations were imposed on criminal defendants until after the Supreme Court decided *Verdin*. The defendant in that case "noticed his intention to defend against the charges" by relying on the mental state defense of "diminished actuality" at trial and produced a report prepared by a psychiatrist. (*Verdin, supra*, 43 Cal.4th at p. 1101.) Consistent with case law that predated Proposition 115, the trial court granted the People's motion to compel Verdin to sit for a mental examination by a prosecution expert. (*Verdin*, at pp. 1101, 1108.)

The Court of Appeal denied Verdin's petition for a writ of mandate, but the Supreme Court reversed. (*Verdin, supra*, 43 Cal.4th at p. 1102.) It held that a compelled mental examination is a form of pretrial discovery not expressly authorized by section 1054.3. (*Verdin*, at pp. 1103–1109.) Therefore, subdivision (e) of section 1054, which states that " 'no discovery shall occur in criminal cases except as provided by this chapter, other express statutory provisions, or as mandated by the Constitution of the United States,' " prevented the court from either enforcing the common law rule that existed before Proposition 115 was approved or creating a new, similar rule.[4] (*Verdin*, at pp. 1106–1117.) At the same time, however, the court invited the Legislature to "establish such a rule within constitutional limits." (*Id.* at p. 1116, fn. 9.)

Lawmakers responded with Assembly Bill No. 1516 (Assembly Bill 1516) to amend section 1054.3. The bill's author identified *Verdin* as the

_____

4    The court expressly disapproved several cases holding that the trial court could compel a mental examination of a defendant who plans to assert a mental state defense at trial. (*Verdin, supra*, 43 Cal.4th at pp. 1106–1107, disapproving *People v. McPeters* (1992) 2 Cal.4th 1148, *People v. Carpenter* (1997) 15 Cal.4th 312, and *People v. Danis* (1973) 31 Cal.App.3d 782.)

precipitating force for this amendment because " 'the prosecution is no longer entitled to a court order requiring a defendant to submit to a mental health examination by a prosecution expert after the defendant has claimed a mental defense.' " (Assem. Com. on Public Safety com., Analysis of Assem. Bill 1516 (2009–2010 Reg. Sess.) as amended Apr. 20, 2009, p. 2 (Public Safety Analysis).)  In describing a desire to return to law as it existed before *Verdin*, the bill's author stated that " '[i]t is critical in criminal cases in which defendants claim a mental defense that they be subject to a mental health examination by a prosecution expert to independently evaluate the merits of their claim.' " (*Ibid.*)

Following the passage of Assembly Bill 1516, the provisions of section 1054.3 as originally enacted were preserved intact in subdivision (a) of the current statute and the amendments were placed in subdivision (b).  As section 1054.3(b)(1) relates to adult criminal defendants, it states with language at issue emphasized:  "Unless otherwise specifically addressed by an existing provision of law, *whenever a defendant in a criminal action ... places in issue his or her mental state at any phase of the criminal action ... through the proposed testimony of any mental health expert*, upon timely request by the prosecution, the court may order that the defendant ... submit to examination by a prosecution-retained mental health expert."  The Legislature also added that the "prosecution shall bear the costs of any such mental health expert's fees for examination and testimony at a criminal trial" and set out a procedure by which a defendant could challenge the tests the prosecution sought to have its expert administer.  (§ 1054.3(b)(1)(A)–(B).)  Finally, legislators expressly stated that the sole purpose of these amendments was to respond to *Verdin*.  (§ 1054.3(b)(2).)

**B.**     ***Section 1054.3(b)(1) and Mental Health Diversion***

8

This appeal raises a purely legal question concerning the reach of section 1054.3(b)(1). The parties agree, as do we, that the statute authorizes a trial court to compel a defendant who has signaled an intent to present expert testimony of a mental state defense *at trial* to submit to a prosecution mental examination. Everyone also agrees that a request for mental health diversion is not decided at a trial. (*Watts*, *supra*, 79 Cal.App.5th at p. 837.)

The issue for us to resolve is whether this procedural distinction makes a difference. The People read section 1054.3(b)(1) broadly to contemplate that a request for mental health diversion is a "phase of the criminal action" during which the defendant's mental state is placed "in issue." They also rely heavily on the fact that—unlike section 1054.3(a)—section 1054.3(b)(1) lacks an explicit limitation that its procedure applies only in the trial context. For their part, Sua and Guthrie read the statutory language, the criminal discovery scheme, and the legislative history of Assembly Bill 1516 as strictly limiting the court's authority under 1504.3(b)(1) to the trial context.

We resolve this dispute by interpreting section 1503.4(b)(1) de novo. (*People v. Green* (2024) 104 Cal.App.5th 365, 370.) Our goal in this endeavor is "to determine the Legislature's intent so as to effectuate the law's purpose." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) "We begin by examining the statute's words, giving them a plain and commonsense meaning" of the words of the statute, keeping the purpose of the statute and " 'the statutory framework as a whole.' " (*Ibid.*) If the statutory language is unambiguous, its plain meaning controls. (See *Green*, at p. 370.) Only if the statutory language is ambiguous do we use the legislative history or other extrinsic aids to clarify our understanding of the legislative intent, although we may also look to the legislative history "to confirm the interpretation already

9

apparent from the plain language." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 755.)

Determining whether section 1054.3(b)(1) applies outside the trial context requires us to parse its language to " 'give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose.' " (*People v. Sylvester* (1997) 58 Cal.App.4th 1493, 1496.) That exercise reveals the statute's trial focus. Well before Assembly Bill 1516 was passed, "mental state" was understood to mean the mens rea element of an offense—that is, the "purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act." (§ 28, subd. (a); accord § 29; *People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) The plain and commonsense interpretation of a mental state being "place[d] in issue … through the proposed testimony of any mental health expert" is to affirmatively challenge whether a mental state exists rather than merely hold the prosecution to its burden. (§ 1054.3(b)(1).) And a trial is the only "phase of the criminal action" at which a dispute over the defendant's possession of a culpable mental state would be resolved.[5] (§ 1054.3(b)(1).)

---

[5] Courts frequently refer to trial as a "phase" of a criminal case. (See, e.g., *People v. Shiga* (2016) 6 Cal.App.5th 22, 42 ["trial phase[]"]; *People v. Superior Court* (*Mouchaourab*) (2000) 78 Cal.App.4th 403, 425–426 [same]; *Mowrer v. Appellate Department* (1990) 226 Cal.App.3d 264, 267 [same]; see also *Sharp v. Superior Court* (2012) 54 Cal.5th 168, 172–176 (*Sharp*) [§ 1054.3(b)(1) applies to "sanity phase proceedings"]; *People v. Hernandez* (2000) 22 Cal.4th 512, 520 (*Hernandez*) [sanity phase may include a trial]; *Maldonado v. Superior Court* (2012) 53 Cal.4th 1112, 1139, fn. 18, 1140 [§ 1054.3(b)(1) applies to both the "guilt phase" and "penalty phase" of a capital trial].) By contrast, as the name would imply, a "diversion" program seeks to redirect a defendant's case from the normal phased progression of a criminal prosecution.

Turning to *Verdin*—the impetus for Assembly Bill 1516—the issue was whether a mental examination could be compelled as to a planned mental state defense that was to be presented at Verdin's criminal trial: "Petitioner, who stands charged with attempted premeditated murder as well as various other felony offenses, has announced his intention to rely on a 'diminished actuality' defense. [Citation.] That is, he intends to argue that as a result of his voluntary intoxication or mental condition, he did not actually entertain the requisite mental state for the charged crimes. In support of this defense, he intends to rely on the expert testimony of ... a psychiatrist who examined him and has formed opinions regarding his mental state at the time of the crimes." (*Verdin*, *supra*, 43 Cal.4th at p. 1100.) The court described this circumstance with language legislators later incorporated into the statute: Verdin "*placed his mental state in issue* by announcing his intention to rely on a diminished actuality defense." (*Id.* at p. 1106, italics added.)

Reading section 1054.3(b)(1) as limited to the trial context is also supported by the statutory framework to which it was added. Four years before *Verdin* was decided, this court held that the language of the prior version of section 1054.3 "clearly indicate[d]" that it "appl[ied] only in the context of a criminal 'trial.'" (*Jones v. Superior Court* (2004) 115 Cal.App.4th 48, 59.) We presume lawmakers were aware of our interpretation of the statute they were amending (*White v. Ultramar, Inc.* (1999) 21 Cal.4th 563, 572), which leads us to conclude that they would have stated a different rule for section 1054.3(b)(1) if they intended for one to apply. So while it is true, as the People point out, that section 1054.3(b)(1) does not expressly mention "at trial," its plain language and the backdrop against which it was enacted obviated the need for an explicit limitation. Thus, we conclude that Sua and Guthrie's interpretation of the statute is a reasonable and persuasive one.

11

We cannot say the same about the People's proffered construction that repeatedly references the statute as applying whenever defendants place their *mental condition* at issue.[6] Yet the phrase "mental condition" appears nowhere in the statute, which instead refers to a defendant's *mental state* being placed at issue. As we have explained, "mental state" in a criminal case is generally understood to mean the *mens rea* or culpable mental state necessary to support a conviction, an issue that would only be resolved at trial.

Moreover, a request for mental health diversion does not truly place the defendant's mental condition "at issue." To establish eligibility, defendants need only introduce evidence that within the last five years they have been diagnosed with a recognized mental disorder by a qualified mental health expert. (§1001.36, subd. (b)(1).) The law does not permit the prosecution to contest the diagnosis by introducing evidence of a contrary diagnosis, so there is really no need for a mental examination by an adversarial expert.[7]

---

[6]     The origin of this reliance is the single use of the term in *Sharp*, *supra*, 54 Cal.4th at p. 174, which held that section 1054.3(b)(1) applies to the proceedings that are initiated by a plea of not guilty by reason of insanity and can ultimately culminate in a trial. Although the People apparently use this term in an attempt to broaden the scope of section 1054.3(b)(1), it is clear from *Sharp* that the Supreme Court only used "mental condition" once and simply as a synonym for the statutory term "mental state."

[7]     It is true that evidence of a proper diagnosis gives rise to a presumption that the defendant's mental disorder was a contributing factor to the commission of the alleged crime, and the People *can* contest the causal connection between the mental disorder and the crime by presenting contrary clear and convincing evidence, which could include their own expert's critique of the defense expert's conclusions. (See § 1001.36, subd. (b)(2).) But disputing the causal connection is hardly the same thing as litigating a contested mental state in an adversarial proceeding.

Although we do not view the statutory language as sufficiently ambiguous to require clarification, the legislative history of Assembly Bill 1516 plainly supports Sua and Guthrie's narrower interpretation of section 1054.3. The author's description of a need for the prosecution to be able to challenge the "merits" of a "mental defense" show that the amendments proposed by the bill were meant to apply only in the trial context. (Public Safety Analysis, *supra*, at p. 2.) So too does the author's desire to restore the law to its pre-*Verdin* state by referring to the three cases it expressly invalidated. (*Id.* at pp. 2–3, see fn. 5, *ante*; *Sharp*, *supra*, 54 Cal.4th at p. 174 [Assem. Bill 1516 "proposed to restore" those authorities].)

Likewise, the enrolled bill report properly equates "mental state" with the mens rea.[8] (Office of Land Use and Climate Innovation[9], Enrolled Bill Rep. on Assem. Bill 1516 (2009–2010 Reg. Sess.) Sept. 10, 2009, pp. 3–4.) It also notes a "defendant is not under any obligation to prove that he or she lacked the required mental state," but some may put this in issue by "introduc[ing] evidence tending to show that they are innocent for this reason (i.e., that they lacked the mental capacity required to have committed the offense)." (*Id.*, at p. 4.) All of these statements confirm that Assembly Bill 1516 was trial focused.

For their part, the People point out that Assembly Bill 1516 initially stated a court could order a prosecution mental health evaluation "[w]henever a defendant places his or her mental state at the time of the

---

[8] Enrolled bill reports are "instructive on matters of legislative intent" even though they are prepared after a bill has been passed. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1218, fn. 3.)

[9] In 2024, Office of Planning and Research changed to its current name, Office of Land Use and Climate Innovation.

crime in issue *by plea or by giving notice of his or her intention to call a mental health expert at trial.*" (Assem. Bill 1516 (2009–2010 Reg. Sess.) as introduced Feb. 27, 2009, italics added.) Legislators replaced the italicized phrase with the language "at any phase of the criminal action … through the proposed testimony of any mental health expert," which was included in the enacted version of section 1054.3(b)(1). (Assem. Bill 1516 (2009–2010 Reg. Sess.) as amended Apr. 20, 2009.) The People claim this change reflects an understanding that a trial court's authority to compel a defendant to submit to a prosecution mental health examination was not limited to the trial context.

This argument, however, glosses over three salient points. First, a plea of not guilty by reason of insanity is often followed by a sanity trial (*Hernandez*, *supra*, 22 Cal.4th at p. 520), a procedure we must presume lawmakers were aware of (*Grassi v. Superior Court* (2021) 73 Cal.App.5th 283, 307). Second, nothing in the legislative history indicates that this amendment was meant to broaden the scope of the bill from the original intent that it apply only in the trial context. Third, in this same amendment, lawmakers added language identifying *Verdin*, which involved a compelled mental examination in the trial context, as the basis for the amendments they were proposing. (See Assem. Bill 1516 (2009–2010 Reg. Sess.) as amended Apr. 20, 2009.) In short, in the portion of the amendment on which the People focus, the Legislature merely replaced specific references to a criminal trial with more succinct language conveying the same point.

Finally, we are unpersuaded by the People's suggestion that reading section 1054.3(b)(1) not to apply to a request for mental health diversion leads to an "absurd" result because the court is denied the ability to consider "reciprocal, tested expert analysis rather than unilateral defense evidence."

14

(See *People v. Bullard* (2020) 9 Cal.5th 94, 107 [courts must avoid absurd results when construing a statute].) As we have already explained, however, the mental health diversion statute does not envision or even permit a battle of experts as to the diagnosis of defendant's mental disorder. And because such a diagnosis of a mental disorder creates a presumption that mental condition contributed to defendant's involvement in the alleged offense (§ 1001.36, subd. (b)(2)), there will generally be little need for a defense expert to testify as to causation. Although the People are free to introduce clear and convincing rebuttal evidence on the issue of causation (*ibid.*), which might include an opinion from their own expert, this does not require a court-ordered mental examination of the defendant by a prosecution expert. But to the People's larger point, we think it is far from absurd for the Legislature to have limited section 1054.3(b)(1) to the trial context that gave rise to the *Verdin* decision, with the implicit understanding it would not apply to a mental health diversion statute enacted nearly a decade later, which created a self-described "informal" process separate and apart from the defendant's trial. (§ 1001.36, subd. (e).)

Having concluded that section 1054.3(b)(1) does not apply outside the trial context, we must vacate the court's orders granting the People's motions to compel Sua and Guthrie to submit to mental health evaluations by prosecution-retained experts.[10]

---

10    This does not leave the People without any remedy. Although prosecutors responding to requests for mental health diversion cannot compel a defendant's psychological examination by a prosecution expert under section 1054.3, in the appropriate case they can ask that the trial judge appoint an expert pursuant to Evidence Code section 730. (See *Verdin, supra*, 43 Cal.4th at p. 1117.)

15

## DISPOSITION

Let peremptory writs of mandate issue in case Nos. SCD305369 and SCE431958 directing the superior court to vacate the orders granting the People's motions to compel the defendants to submit to prosecution mental health examinations, which issued, respectively, on January 8, 2026, and February 13, 2026. In both cases, the court is directed to enter a new order denying the People's motions. The stays previously issued will dissolve upon finality of this opinion.

DATO, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.

16